Tara A. Harris
Melissa Broch
Harris Law Office PLLC
825 Great Northern Blvd., Suite 318
Helena, MT 59601
Phone: (406) 513-1412
Email: tara@harrislawmt.com
melissa@harrislawmt.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| JAMES BUSCHER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>INTERMOUNTAIN DEACONESS CHILDREN'S SERVICES, a domestic non-profit public benefit corporation,<br><br>Defendant. | No. CV _____<br><br>**VERIFIED COMPLAINT AND JURY TRIAL DEMAND** |

COMES NOW Plaintiff, James Buscher, and for his claim for relief against Defendant Intermountain Deaconess Children's Services, alleges as follows:

### INTRODUCTION

This action seeks redress for the damages sustained by Plaintiff James

Buscher when Defendant violated the Family and Medical Leave Act (FMLA) and the Families First Coronavirus Response Act (FFCRA) also known as the Emergency Family and Medical Leave Expansion Act (EFMLEA). Count I alleges violations of the FMLA. Count II alleges violations of the FFCRA and EFMLEA.

## PARTIES

1. Plaintiff James Buscher (James) is, and at all times material to this complaint was, a citizen of the State of Montana, residing in Lewis and Clark County, Montana.

2. James is informed and believes, and on that basis alleges, that Defendant Intermountain Deaconess Children's Services (Intermountain) is a domestic non-profit public benefit corporation headquartered in Helena, Montana. Intermountain listed the address for its principal place of business with the Montana Secretary of State as 3240 Dredge Drive, Helena, Montana 59602, with CEO Jim FitzGerald acting as its registered agent.

3. James is further informed and believes, and on that basis alleges, that Caitlin Jensen (Jensen) was, at all times material hereto, an agent and employee of Intermountain, and was acting within the scope of her agency and employment authority when she terminated James in violation of the FMLA, FFCRA, and EFMLA.

## JURISDICTION

4. This action involves application of the Family and Medical Leave Act

(FMLA) and the Families First Coronavirus Response Act (FFCRA) also known as the Emergency Family and Medical Leave Expansion Act (EFMLEA), 29 U.S.C. § 2601 *et seq*. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and subject matter jurisdiction over this complaint pursuant to 29 U.S.C. § 2617(a) of the FMLA.

## VENUE

5.     Venue is proper in the Helena Division of the United States District Court for the District of Montana because Defendant maintains its principal place of business in Helena, Montana and the events or omissions giving rise to the claim occurred in Montana. 28 U.S.C. §§ 1391(b)(1) and (2) and -(c)(2).

## STATEMENT OF THE CLAIM

6.     Plaintiff James Buscher (James) was a full-time employee of Zero to Five, a strategic initiative of the Headwaters Foundation, as a communication strategist when Zero to Five was transferred from Healthy Mothers Healthy Babies to Defendant Intermountain Deaconess Children's Services (Intermountain) in July 2019.

7.     Although James had worked for Zero to Five since November 2018 under Healthy Mothers Healthy Babies, when Zero to Five transferred to Intermountain, Intermountain restarted James' probationary period.

8.     Caitlin Jensen (Jensen) was the executive director of Zero to Five and employed by Intermountain beginning in July 2019.

9. In January 2020, Intermountain approved James for FMLA leave for the birth of his child following his completion of Intermountain's paperwork.

10. Prior to taking his approved-FMLA leave, James never received any formal or informal complaints from Jensen regarding his job performance. To the contrary, Jensen had consistently praised James' job performance.

11. James relied on Intermountain's representations that he qualified for FMLA leave.

12. After consultation with Jensen and Intermountain Human Resources, James began three weeks of consecutive approved FMLA leave on March 13, 2020, for the birth of his child, keeping the remaining nine weeks to use as intermittent approved FMLA leave for emerging family needs.

13. While James was on approved-FMLA leave, then Montana Governor Steve Bullock issued a stay-at-home order due to the COVID-19 pandemic. James inquired of Jensen and Intermountain Human Resources whether he qualified for the two-week paid COVID-19 administrative leave as he and his wife had been instructed by their medical providers to quarantine at home with their toddler and infant child. Intermountain denied James the COVID-19 administrative leave and told him he should be grateful he had a job.

14. Following his return to work on April 6, 2020 from consecutive FMLA leave, James noticed a distinct change in workplace culture. For example, Jensen claimed to be "too busy" to meet with him on his first day back at work.

15. On April 7, 2020, James expressed concerns to Jensen about balancing his increased job duties with his additional family responsibilities. James had concerns about his ability to handle the increased workload while working at home with his wife and two kids during the pandemic. Jensen became angry and frustrated stating she would find someone else to do the work if James was not able to do it. Additionally, at a staff meeting Jensen claimed to have been working four jobs while James was out on leave and warned James that any decrease in his productivity due to the demands of his family life was unacceptable.

16. James had a one-on-one call with Jensen on April 13, 2020, Jensen expressed frustration with James over a marketing strategy and directed him to get final drafts of the plan to her by the end of the week. James met the deadline although Jensen neglected to give formal approval for the plans despite repeated requests from James. When Jensen terminated James on June 19, 2020, she had yet to formally approve the plans.

17. On April 20, 2020, James had an especially difficult one-on-one call with Jensen during which she raised her voice at him several times and scolded him for missing a deadline she had failed to communicate clearly to him. Jensen also claimed to be concerned James intended to undermine her with respect to published documents when Jensen had never raised this concern before. James suggested they enlist a third party to help facilitate their communication. Jensen

rejected this suggestion and rather than engage in conflict resolution, decided to give James a formal performance appraisal.

18. In May 2020, James participated in the performance appraisal. Because he disagreed with Jensen's assessment of his work and her manner of conducting the evaluation, James declined to sign the written performance appraisal and expressed concerns to Intermountain Human Resources regarding Jensen's increased hostility towards him.

19. At the end of May 2020, James communicated to Intermountain Human Resources that he needed to take three weeks of intermittent FMLA while his wife returned to work. Human Resources instructed James to tell them the dates he would be taking and explained the information would be provided to Jensen. James expressed concern about the safety of his job to Human Resources, but Human Resources assured him there were no plans to terminate his employment.

20. On June 1, 2020, James informed Jensen he needed to take the three weeks of approved intermittent FMLA leave beginning June 8, 2020. Although James proposed a schedule that would allow him to meet time-sensitive deadlines, Jensen became upset that James' proposed leave would be a personal burden on her.

21. With the approval of Human Resources, James began his intermittent FMLA leave as planned on June 8, 2020. On June 11, 2020, James attended a meeting with Jensen and Intermountain's Human Resource Director Lora Cowee

(Cowee). Cowee informed James he could either voluntarily resign or face termination.

22.   James did not voluntarily resign and Intermountain terminated his employment involuntarily on June 19, 2020.

23.   James believes he was discharged in violation of the FMLA and FFCRA.

## COUNT I: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

24.   Plaintiff realleges and incorporates by reference paragraphs 1 through 23.

25.   The Family and Medical Leave Act (FMLA) provides eligible employees of covered employers with up to 12 workweeks of job-protected leave during any 12-month period for certain family and medical reasons. The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]" or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615. "The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

26.   Intermountain approved James for FMLA leave beginning March 13, 2020 with a 480-hour allowance. Based on this approval, James believed he was an

eligible employee under the FMLA and that he would have 12 workweeks of job-protected leave from March 13, 2020 until March 12, 2021. Had Intermountain informed James he was not eligible for FMLA leave, James would not have taken FMLA leave and therefore, would not have been terminated.

27. James alleges that Intermountain violated the FMLA by retaliating against him by terminating his position while he was on approved FMLA leave.

28. The remedy for a violation of the FMLA is an award of wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation, plus interest on such sum (calculated at the prevailing rate). An employee may also be entitled to appropriate equitable relief, such as reinstatement, and reasonable attorney's fees, reasonable expert witness fees, and other costs of the action. Additionally, FMLA allows an employee to recover liquidated damages. 29 U.S.C. § 2617(a).

29. Private actions filed under the FMLA must be filed within two (2) years after the last action that the employee contends was in violation of the FMLA, or three years if the violation was willful. 29 U.S.C. § 2617(c). Plaintiff was terminated on June 19, 2020. This action is timely filed.

### COUNT II: VIOLATION OF THE FAMILIES FIRST CORONAVIRUS RESPONSE ACT AND EMERGENCY FAMILY AND MEDICAL LEAVE EXPANSION ACT

30. Plaintiff realleges and incorporates by reference paragraphs 1 through 23.

31. The Families First Coronavirus Response Act (FFCRA) also known as the Emergency Family and Medical Leave Expansion Act (EFMLEA) amended the FMLA from its effective date of April 2, 2020 until December 31, 2020, by changing the term "eligible employee" to an employee who has been employed for at least 30 calendar days by the employer at the time the leave is requested. 29 U.S.C. § 2611-2612 (2020). For an employee to qualify for leave, the employee must be unable to work (or telework) due to a need for leave to care for the employee's child if the child care provider is unavailable, due to COVID-19, the employee has been advised by a health care professional to self-quarantine because of COVID-19, or the employee is caring for someone in isolation or quarantine, including self-quarantine or medical advice. 29 U.S.C. § 2611 (2020).

32. The Department of Labor issued regulations clarifying that the anti-retaliation and anti-interference provisions of the FMLA under 29 U.S.C. § 2615 apply fully to the rights created by the EFMLEA. 29 C.F.R. § 826.151(a) (2020). The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]" or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615.

33. The EFMLEA also imposes an affirmative duty on the employers to conspicuously post a notice on their premises explaining the EFMLEA leave rights. 29 C.F.R. § 826.80 (2020). An employer's failure to follow the EFMLEA

notice requirements may constitute interference with, restraint, or denial of the exercise of an employee's FMLA rights when that failure actually harms an employee. 29 C.F.R. § 825.300 (2020)

34. James requested leave under the FFCRA and EFMLEA from Intermountain due to his family's medical provider advising he and his wife quarantine at home with their toddler and infant due to COVID-19. Intermountain denied this leave and failed to follow the notice requirements under the EFMLEA.

35. James alleges Intermountain violated the FFCRA and EFMLEA by interfering with and denying his exercise of and attempted exercise of his FFCRA and EFMLEA rights and by failing to provide him with the notice requirements under the EFMLEA.

36. An eligible employee may file a private action to enforce the EFMLEA. 29 C.F.R. § 826.151(b) (2020). Private actions filed under the FMLA must be filed within two (2) years after the last action that the employee contends was in violation of the FMLA, or three years if the violation was willful. 29 U.S.C. § 2617(c). Plaintiff was terminated on June 19, 2020. This action is timely filed.

### REQUEST FOR RELIEF

For the reasons set forth above, Plaintiff requests that this Court:

1. Enter judgment in Plaintiff's favor on the FMLA claim in Count I and order the Defendant to pay Plaintiff lost wages, employee benefits, other

compensation, and liquidated damages plus prevailing rate interest, in an amount to be determined at trial;

2. Enter judgment in Plaintiff's favor on the FFCRA and EFMLA claim in Count II and order the Defendant to pay Plaintiff lost wages, employee benefits, other compensation, and liquidated damages plus prevailing rate interest, in an amount to be determined at trial; and

3. Award attorneys' and expert witness fees, and costs of suit to Plaintiff, along with any other appropriate equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues triable by a jury.

Respectfully submitted this 17th of June, 2022.

HARRIS LAW OFFICE PLLC

By: MELISSA BROCH
*Attorneys for Plaintiff*

# VERIFICATION

STATE OF MONTANA      )
                      :ss
County of Lewis and Clark )

James Buscher, being first duly sworn, deposes and says that he has read the foregoing *Verified Complaint and Jury Trial Demand*, knows the contents thereof, and that the facts and matters therein contained are true, accurate and complete to the best of his knowledge and belief.

_____
James Buscher

STATE OF MONTANA      )
                      :ss
County of Lewis and Clark )

On the 16th day of June, 2022, James Buscher personally appeared before me and having been duly sworn did herein execute the above instrument for the purposes stated.



MICHELLE A. VAN NICE
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
April 17, 2023

_____
Notary